Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000828
21-AUG-2014
08:02 AM

NO. CAAP-13-0000828

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
TYRONE WILLIAMS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NOS. 11-1-0183 and 12-1-0814)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Fujise and Reifurth, JJ.)

Defendant-Appellant Tyrone Williams (Williams) appeals from the Judgments of Conviction and Sentence for Burglary in the First Degree in violation of Hawaii Revised Statutes (HRS) § 708-810(1)(c) (1993) and Robbery in the Second Degree in violation of HRS § 708-841(1) (Supp. 2013) entered by the Circuit Court of the First Circuit (Circuit Court) on April 26, 2013.[1]

On appeal, Williams argues that: (1) there was insufficient evidence to sustain his robbery conviction; (2) the Circuit Court erred in denying his Motion to Suppress Identification; and (3) the Circuit Court committed plain error when it permitted the resident manager to identify him at trial.

---

[1] The Honorable Randal K.O. Lee presided.

The State filed a felony information charging Williams with four counts of Burglary in the First Degree in violation of HRS § 708-810(1)(c), for separate incidents in different apartments in the same building and on the same date for two of the counts as the incident in the instant appeal under Cr. No. 12-1-0814. On the State's motion the Circuit Court consolidated the two cases. The order was entered on July 27, 2012. Williams's notice of appeal purports to appeal from the judgments in both Cr. Nos. 11-1-0183 and 12-1-0814, but Williams does not argue points with regard to Cr. No. 12-1-0814.

1.   There was sufficient evidence to support a conviction for Robbery in the Second Degree.  Williams argues that the evidence was insufficient to establish that he punched Alexander Lamadrid (Lamadrid) "in the course of committing theft, 'with the intent to overcome [Lamadrid's] physical resistance or physical power of resistance[]" under HRS § 708-841(1)(a), or that he threatened the use of force with the intent to compel acquiescence to the taking of or escaping with the property under HRS § 708-841(1)(b) as the theft was complete when Williams left the dormitory room.[2]  The jury found Williams guilty of Robbery in the Second Degree and answered in the affirmative to both interrogatories posed to them:

> Interrogatory One:  Did the jury unanimously find that the prosecution proved beyond a reasonable doubt that [Williams], while in the course of committing theft from Keith Detweiler [(Detweiler)], threatened the imminent use of force against the person of [Lamadrid]?  Your answer must be unanimous.

> Interrogatory Two:  Did the jury unanimously find that the prosecution proved beyond a reasonable doubt that [Williams] while in the course of committing theft from [Detweiler,] used of [sic] force against the person of [Lamadrid]?  Your answer must be unanimous.

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not

---

[2]   HRS § 708-841(1), Robbery in the second degree, provides, in pertinent part,

> (1)   A person commits the offense of robbery in the second degree if, in the course of committing theft . . .

>> (a)   The person uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance;

>> (b)   The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property[.]

"In the course of committing a theft" is defined as follows:

> An act shall be deemed "in the course of committing a theft . . ." if it occurs in an attempt to commit theft . . . in the commission of theft . . . or in the flight after the attempt or commission.

HRS § 708-842 (Supp. 2013).

2

> whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (citation omitted).

Taking the evidence in the light most favorable to the prosecution, there was substantial evidence supporting the jury's verdict. Both Detweiler and Lamadrid testified that a red Microsoft Zune MP3 player (player) was taken from their dormitory room by an intruder and that the player belonged to Detweiler. Some ten to fifteen minutes later, Lamadrid followed a man, that Detweiler recognized as the person who had just been in their room, walking out of their dormitory lobby.

After striking up a conversation with the person, later identified as Williams by both Detweiler and Lamadrid, Williams produced the same red MP3 player out of his pocket. When Lamadrid snatched the player from Williams and walked away, Williams threatened the use of force against Lamadrid, by yelling after the latter, "stop, I'm going to shoot" and gestured with his hand under his hoodie as if he had a gun. Lamadrid stopped, but testified that as Williams approached him, he realized Williams did not have a gun and yelled, "where's your gun?" and Williams responded, "I don't need no gun."

Williams approached Lamadrid and the two engaged in a yelling session, Williams yelling at Lamadrid that the latter stole the player from him and Lamadrid yelling back that Williams had stolen it first. Lamadrid placed the player in his pocket and stepped back, "like we're going to fight. And he's like[,] are we going to fight? I was like I guess so" at which point Williams punched Lamadrid in the face, knocking him to the ground.

By that time, the dormitory resident advisor, who saw Williams punch Lamadrid and heard the two men arguing about the player caught up to them. Williams said, "well, you can have it" and ran off, heading towards the Ala Wai. Lamadrid returned the player to Detweiler, who confirmed it was his player after confirming his music was recorded on it. The police also later

that morning returned to Detweiler headphones belonging to Detweiler that the police had recovered from Williams.

In denying Williams's motion for judgment of acquittal, the Circuit Court found that there was sufficient evidence of second-degree robbery under the theory that (1) Williams was still in the course of flight from the original theft when he used or threatened the use of force against Lamadrid; or (2) Williams was attempting to steal the MP3 player owned by Detweiler, which Lamadrid had taken back from Williams, when Williams used or threatened the use of force against Lamadrid. We conclude that there was sufficient evidence under the latter theory to support Williams's conviction for Robbery in the Second Degree.

2. The Circuit Court did not err in denying Williams's motion to suppress pretrial and in-trial identification. Applying State v. DeCenso, 5 Haw. App. 127, 681 P.2d 573 (1984), the Circuit Court ruled that, while the show-up procedure was impermissibly suggestive, when viewing the totality of the circumstances, the identifications by Detweiler and Lamadrid were reliable and worthy of presentation to and consideration by the jury. We agree.

> When the defendant challenges admissibility of eyewitness identification on the grounds of impermissibly suggestive pre-trial identification procedure, he or she has the burden of proof, and the court, trial or appellate, is faced with two questions: (1) whether the procedure was impermissibly or unnecessarily suggestive; and (2) if so, whether, upon viewing the totality of the circumstances, such as opportunity to view at the time of the crime, the degree of attention, and the elapsed time, the witness's identification is deemed sufficiently reliable so that it is worthy of presentation to and consideration by the jury.

State v. Araki, 82 Hawai'i 474, 484, 923 P.2d 891, 901 (1996) (quoting State v. Okumura, 78 Hawai'i 383, 391, 894 P.2d 80, 88 (1995)).

The testimony presented at the hearing on the motion in limine supported the Circuit Court's conclusion. Detweiler observed the intruder for thirty to forty-five seconds while the intruder was in Detweiler's dorm room, uninvited and in the early hours of the morning, and Detweiler questioned him after Detweiler heard the intruder unzipping Detweiler's backpack.

4

Detweiler therefore had the opportunity and the motivation to view this intruder during this unusual and startling event and had a second opportunity to view the person when, approximately five to ten minutes later, Detweiler was in the lobby waiting for the dormitory advisor when he saw the intruder enter the lobby and leave the building and told Lamadrid so. He was again able to recognize the intruder as the person Lamadrid confronted out on the street. Detweiler was able to give details regarding the intruder's appearance. Detweiler was "positive" about his identification of the intruder at the field lineup, perhaps a half-hour after the incident.

Lamadrid testified that he saw the intruder briefly in his room and followed the intruder, who was wearing a hoodie, out into the hallway, but did not see the intruder's face. Lamadrid had ample opportunity to see the intruder when Lamadrid caught up to the latter at the bus stop, who was wearing the same clothing, and the latter produced Detweiler's player out of his pocket. When the police took Lamadrid to the field lineup, conducted a short time later, he was a "hundred percent" sure of his identification.

Based on the multiple opportunities and circumstances under which both Detweiler and Lamadrid were able to view Williams, their ability to describe his appearance, and the short interval between the incident and the field lineup, the Circuit Court did not err in denying Williams's motion to suppress identification.

3. Williams argues that the Circuit Court erred in allowing the dormitory advisor to identify him at trial because she "was not present for the hearing on the motion, and the circuit court never determined whether viewing the totality of the circumstances, [her] identification of Williams was sufficiently reliable so that it was worthy of presentation to and consideration by the jury." Williams waived his challenge to the denial of his motion to suppress identification as to the dormitory advisor because he did not pursue his motion regarding this witness despite multiple opportunities to do so.

Notwithstanding his waiver, Williams asks this court to take plain error review. Plain error review is appropriate "to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." State v. Nichols, 111 Hawai'i 327, 333, 141 P.3d 974, 980 (2006) (citation omitted); see State v. Fox, 70 Haw. 46, 56, 760 P.2d 670, 676 (1988) (quoting U.S. v. Atkinson, 297 U.S. 157, 160 (1936) ("the decision to take notice of plain error must turn on the facts of the particular case to correct errors that 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'")).

Given the circumstances of this case, including the eyewitnesses' identification testimony as well as the evidence of the discovery of the stolen items on Williams's person immediately after he left the premises, we decline to review for plain error here.

Therefore, the Circuit Court of the First Circuit's April 26, 2013 Judgments of Conviction and Sentence entered in Cr. Nos. 11-1-0183 and 12-1-0814 are affirmed.

DATED: Honolulu, Hawai'i, August 21, 2014.

On the briefs:

Taryn R. Tomasa,
Deputy Public Defender,
for Defendant-Appellant.

Brandon H. Ito,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

6